In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

### NO. 09-23-00323-CV
_____

### TRUE TEMPER SPORTS, INC., Appellant

### V.

### DAVID KELLY, Appellee

_____

### On Appeal from the County Court at Law No. 6
### Montgomery County, Texas
### Trial Cause No. 22-12-17076-CV
_____

### MEMORANDUM OPINION

This interlocutory appeal pertains to a special appearance wherein Appellant True Temper Sports, Inc. ("Appellant" or "True Temper") alleged that the trial court lacked personal jurisdiction over the third-party claims asserted against it by Appellee David Kelly. On appeal, True Temper argues that the trial court erred by denying its special appearance on the basis that it was not verified. We conclude that the special appearance was sufficiently verified and that, because True Temper's contacts with Texas were insufficient to show that its conduct was related to the

1

claims in this lawsuit, the trial court erred by denying the special appearance. We reverse the trial court's order denying True Temper's special appearance and dismiss David Kelly's claims against True Temper for lack of personal jurisdiction.

Background

In December of 2022, Plaintiff Kelly Interests, Ltd. ("Kelly Interests") filed its original petition against Appellee David Kelly ("Appellee" or "Kelly") and against True Temper alleging that the golf club shafts Kelly Interests purchased did not meet the specifications in the purchase order.[1] True Temper then filed a Special Appearance and Request to Dismiss it from the lawsuit. On February 21, 2023, Kelly Interests filed a Notice of Nonsuit Without Prejudice against True Temper. The trial court signed a Partial Order of Nonsuit as to True Temper without prejudice on February 23, 2023, leaving only David Kelly as a defendant. After the nonsuit, Kelly filed a third-party claim against True Temper in a pleading styled as a cross-claim (hereinafter cross-claim). Kelly alleged that defects in the golf shafts were caused by True Temper's actions. Kelly asserted claims against True Temper for breach of contract, indemnity, negligence, negligent misrepresentation, and attorney's fees.

---

[1] Kelly Interests' original petition is not included in our appellate record, and because Kelly Interests is not a party to this appeal, we discuss it only as necessary. Also, True Temper alleges that there is no relationship between Kelly Interests and David Kelly, despite similar names.

2

According to the cross-claim, True Temper manufactures putters used by miniature golf courses in the United States and in Canada, and Kelly is a "reseller/wholesaler" who sells golf shafts including but not limited to shafts manufactured by True Temper. The cross-claim states that True Temper is a Delaware corporation and Kelly is a resident of Tennessee. According to the cross-claim, when Kelly Interests ordered golf shafts from Kelly in April of 2022, Kelly responded that he "did not have []the number of shafts requested or the specific specifications" that Kelly Interests needed, but that Kelly would contact True Temper—with which Kelly had an ongoing business relationship—to discuss Kelly Interests' requirements. According to the cross-claim, Kelly Interests received "a very substantial number of True Temper shafts[]" in May of 2022, many of which were not to specifications.

On June 20, 2023, True Temper filed its Special Appearance and Answer to Defendant Kelly's Cross-Claim ("Special Appearance"). True Temper alleges in its Special Appearance that the trial court did not have personal jurisdiction over True Temper because

> [] True Temper is not a resident of Texas.
> [] True Temper does not now engage and has not engaged in business with Plaintiff in Texas or committed any tort, in whole or in part, within the state of Texas.
> [] True Temper does not maintain a place of business in Texas, and has no employees, servants, or agents within the state of Texas.

3

In addition, True Temper contends that Texas courts do not have either general or specific personal jurisdiction over it because True Temper did not have sufficient minimum contacts with Texas. True Temper states that it is incorporated in Delaware and its headquarters are in Memphis, Tennessee, so the requirements for general personal jurisdiction are not met. In addition, True Temper argues that Texas courts do not have specific personal jurisdiction over it because "[t]he claims alleged here do not arise from True Temper's Texas contacts."

Kelly filed Defendant/Cross-Claimant, and Third-Party Plaintiff David Kelly's Response to Third-Party Defendant True Temper Sports, Inc. Special Appearance (Response).[2] In his Response, Kelly argues that True Temper's Special Appearance was not sworn as required by Rule 120a(1), which rendered the Special Appearance a general appearance because it was not in compliance with the rule.

Next, Kelly argues that True Temper is amenable to personal jurisdiction in Texas under the long-arm statute based on its business model and its extensive business in Texas. According to Kelly, "Texas is one of True Temper's major marketplaces[,]" and the True Temper website lists "dozens and dozens of agents, dealers, retailers, and manufacturers in Texas with whom it does business." Attached to its Response is an exhibit listing True Temper authorized dealers in Dallas,

---

[2] Although the response is styled as David Kelly's Response, therein Kelly alleges that it is filed "with agreement by Kelly Interests, Ltd.[]"

Houston, Austin, and San Antonio. Kelly also alleges that True Temper has agents, dealers, retailers, or manufacturers in other Texas cities, including El Paso, Abilene, and Tyler. According to Kelly, True Temper's presence in Texas reflects that True Temper "'sought out Texas and the benefits and protections of its laws[]'"[3] and it purposefully availed itself of the privilege of conducting business in Texas such that True Temper could reasonably anticipate being haled into Texas courts. Kelly argues that True Temper has at least minimum contacts with Texas.

In addition, Kelly argues in its Response that True Temper's contacts with Texas are related to the litigation because "True Temper entered into an agreement with Kelly Interests through True Temper's agent, David Kelly[,] to fulfill the order as specified by Kelly Interests[]" and because "True Temper had care, custody and control of the shafts shipped to Kelly Interests."

Kelly argues that the exercise of personal jurisdiction over True Temper satisfies due process because at one time, it was registered to do business in Texas, because it would be "surprising" if True Temper representatives never travelled to Texas to do business, and because the burden on True Temper to defend itself in this litigation is "de minimis at best[]" due to its already-existing business contacts with Texas.

---

[3] Quoting *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 154 (Tex. 2013).

Kelly also filed a letter asking the trial court to receive a Supplemental Exhibit, which Kelly represented as showing "the location of the dealer-agents with whom True Temper works in Texas in supplying golf shafts or golf club manufacture, repair, or retail sale." According to Kelly, the exhibit was downloaded from True Temper's website through the "dealer location" drop-down menu, and it included maps of Dallas, Fort Worth, Houston, Austin, San Antonio, Reynosa, Lubbock, and Midland with red dots to identify the locations of its dealers.

The trial court set the matter for submission for August 11, 2023. On August 8, 2023, True Temper filed an Agreed Motion for Continuance, and the trial court granted the motion and reset the matter for submission on September 1, 2023. On August 18, 2023, True Temper filed a Declaration of Jason Jenne that states it is "in support of Defendant True Temper Sports, Inc.'s [] Special Appearance." The Declaration further states that the facts stated therein are true and are based on Jenne's personal knowledge:

> [] I am the Chief Financial Officer of Defendant True Temper, and I have worked at True Temper since 1998, with the exception of 2015-2017. As such, I am familiar with all aspects of True Temper's business. True Temper is a corporation incorporated in Delaware with its principal place of business in Memphis, Tennessee. True Temper does not maintain a place of business in Texas, and has no employees, servants, or agents within the state of Texas. True Temper does not own property in Texas or hold any bank accounts in Texas.
> [] Neither True Temper, nor myself, have entered into any transactions involving Plaintiff Kelly Interests, Ltd.

6

On August 21, 2023, Kelly filed his Response to Declaration of Jason Jenne, and Second Set of Supplemental Exhibits to Third-Party Defendant True Temper's Special Exceptions. According to Kelly, True Temper has an "extensive dealer network in Texas," and it has an "address to facilitate payment of shafts manufactured by a wholly-owned subsidiary in Fort Worth," such that it should expect that its shafts would be purchased in Texas. Kelly alleges that Premium Golf Management Co. Ltd. manufactures ACCRA brand golf shafts and since at least 2019, ACCRA was a wholly-owned subsidiary of True Temper. Attached to the response is an exhibit purporting to be an invoice to David Kelly from Premium Golf Management Co. Ltd. which Kelly represents as reflecting "that True Temper's wholly-owned subsidiary [ACCRA] was present and doing business in Texas." Kelly also attached a 2019 article from Golf Digest Magazine about True Temper's acquisition of Premium Golf Management Co., which is the parent company of ACCRA, and the article states that an important aspect of the acquisition was "PGMC/ACCRA's management and servicing of True Temper's aftermarket business throughout North America and Europe." Kelly concludes that True Temper has "far more than minimal contacts with Texas" and is subject to personal jurisdiction in Texas.

On August 25, 2023, True Temper filed a Supplemental Brief in Support of Special Appearance and Objections to Defendant David Kelly's Response, which

included a Supplemental Declaration of Jason Jenne as an exhibit. Therein, True Temper acknowledges that its products are sold in Texas, but it states that the retailers selling the shafts are not its agents, employees, or contractors. According to True Temper, ACCRA is based in Ontario, Canada, and although owned by True Temper, ACCRA's operations are separate from True Temper's. True Temper argues that the invoice that David Kelly included with his Response to Declaration of Jason Jenne "is not even the invoice from the transaction at issue in this matter." True Temper alleges that the shafts at issue in this lawsuit were manufactured in Mississippi and were purchased by Kelly Interests from David Kelly—a Tennessee-based vendor—who purchased them from True Temper.

True Temper denies it has continuous and systematic contacts with Texas that are sufficient for general jurisdiction because it is a resident of Delaware and is based primarily in Tennessee. True Temper also argues that Kelly did not plead sufficient facts to trigger the Texas long-arm statute because it did not allege that True Temper engaged in any act in Texas related to the specific facts of this case and because there is no evidence that the allegedly defective shafts were purchased or manufactured in Texas. True Temper maintains that the mere fact that its products are available for purchase in Texas is not sufficient to confer jurisdiction because it does not show purposeful availment. True Temper argues that the facts alleged by Kelly's cross-claim rely on conduct that occurred outside of Texas: "Kelly, a Tennessee resident,

8

purchased materials from True Temper, a Tennessee company, and those materials came from Mississippi." True Temper denies that ACCRA has any offices or locations in Texas, and again asserts that True Temper is headquartered in Memphis. True Temper also objects to the exhibits attached to Kelly's response and argues they are inadmissible because they are not authenticated, and they are hearsay.

Attached to True Temper's Supplemental Brief is the Supplemental Declaration of Jason Jenne. The declaration states it is made under penalty of perjury, that the facts are true and correct and are based on the declarant's personal knowledge, and it provides the declarant's date of birth and address. Jenne states that he is the Chief Financial Officer for True Temper, which is incorporated in Delaware and has its principal place of business in Memphis. Jenne further states that True Temper does not maintain a place of business nor employees in Texas, and it owns no property in Texas. According to the declaration, True Temper does not market or specifically advertise in Texas. Jenne further maintains that ACCRA is a Canadian company and wholly-owned subsidiary of True Temper, but that ACCRA operates as a separate business and has no offices, employees, or contractors in Texas. According to the Supplemental Declaration, the invoice that Kelly attached to his Response is "not the invoice for the shafts purchased by Kelly Interests that are at issue in this case[,]" it shows a Canadian phone number for ACCRA, and the shafts at issue in this lawsuit were made in Amory, Mississippi. The Supplemental

9

Declaration further states that the invoice shows a Fort Worth, Texas, address only because ACCRA needed a U.S. address for billing purposes.

On August 28, 2023, David Kelly filed a Response to True Temper's Supplemental Declaration of Jason Jenne, and Sur-Reply to True Temper's Supplemental Brief Dated August 25, 2023. Kelly's Response argues that a "string of emails presented in previous Supplemental Exhibits" reflects that True Temper entered into transactions with Kelly Interests. However, in a Sur-Reply, True Temper responds that "[t]here is no such email string attached to any pleading in this case."

On August 31, 2023, True Temper filed a Supplemental Reply and Objections to Defendant David Kelly's Response to Special Appearance Exhibits. Referring to Kelly's response of July 5, 2023 to True Temper's Special Appearance, True Temper argues that Kelly's unsworn pleadings—specifically, a copy of its cross-claim against True Temper—are inadmissible hearsay. In addition, True Temper objects to the exhibits filed by Kelly purporting to be lists of dealers or retailers of True Temper's products in Texas as unauthenticated and as hearsay. According to True Temper, "Kelly has not offered any competent evidence to rebut Mr. Jenne's declarations."

On September 19, 2023, the trial court signed an order denying True Temper's Special Appearance, which states as follows:

On September 1, 2023, the Court considered Defendant True Temper's Special Appearance, along with all responsive filings thereto, including Defendant David Kelly's numerous Responses, Defendant True Temper's Supplemental Brief and Reply, Defendant David Kelly's Supplemental Exhibits, Defendant True Temper's Declaration of Jason Jenne, and all other required matters. Having thoroughly considered the foregoing, the Court found that Defendant True Temper's Special Appearance should be DENIED.

Pursuant to Rule 120a, Texas Rules of Civil Procedure, "special appearance shall be made by sworn motion …." and strict compliance with TRCP 120a is required. Tex. R. Civ. P. 120(a); *See* Casino Magic Corp. v. King, 43 S.W.3d 14, 18 (Tex. App.—Dallas, 2001, pet. denied).

The Court finds that Defendant True Temper's Special Appearance motion filed on June 20, 2023, was not sworn, nor verified as required by TRCP 120a. Additionally, the Special Appearance motion had no affidavit attached thereto. Defendant True Temper filed a "Declaration of Jason Jenne" on August 18, 2023, eight days after its request for continuance of the Special Appearance hearing on the court's submission docket was granted and reset from August 11, 2023, to September 1, 2023. The Court finds that such "Declaration" was unsworn and did not attest to the facts within the Special Appearance motion; therefore, the "Declaration" could not serve to verify the special appearance. It is, therefore:

ORDERED, ADJUDGED AND DECREED that Defendant True Temper's Special Appearance is DENIED.

True Temper then filed an Emergency Motion for Reconsideration of Order Denying Special Appearance arguing that it did not appear that the trial court had considered the additional evidence and Supplemental Declaration of Jason Jenne it filed on August 25, 2023. True Temper argues that Rule 120a permits a defendant to "cure any defects in a special appearance, including the failure to verify, so long as the evidence is on file at least seven days before the hearing or submission date." According to the Motion, the declarations of Jason Jenne address all the

11

jurisdictional facts and satisfy Rule 120a's verification requirement. True Temper also argues that this Court has held that an unsworn declaration may be used in place of an affidavit to support a special appearance. *See TBS Bus. Sols. USA, Inc. v. Allco, LLC*, No. 09-21-00146-CV, 2022 Tex. App. LEXIS 6955, at **17-19 (Tex. App.—Beaumont Sept. 15, 2022, no pet.) (mem. op.). In addition, True Temper distinguished the case on which the trial court relied, *Casino Magic Corp. v. King*, 43 S.W.3d 14 (Tex. App.—Dallas 2011, pet. denied), from this lawsuit because in *Casino Magic*, the affidavit at issue failed to address any jurisdictional facts. *Id.* at 18. True Temper also argues that the trial court sua sponte raised the issue of whether True Temper's special appearance was verified, and that no party had objected that the special appearance was not verified. Therefore, True Temper did not have an opportunity to cure the defect, and by his failure to object on this basis, Kelly waived the complaint for appeal.

Kelly filed a response to the Emergency Motion for Reconsideration, arguing that the trial court's order "stated unequivocally that it considered not only the two Declaration[s] of Jason Jenne, but 'all other required matters.'" Kelly also argues that True Temper's declarations were not in strict compliance with Rule 120a. According to Kelly, although a special appearance may be amended to cure a defect, "True Temper elected not to engage in that process[]" and did not cure the defects in the special appearance.

In its Reply in Support of its Emergency Motion for Reconsideration, True Temper argues that an unsworn declaration may be used in lieu of a written sworn declaration or affidavit, citing to section 132.001(a) of the Texas Civil Practice and Remedies Code. True Temper further argues that Jenne's Supplemental Declaration includes a jurat and "addresses all the pertinent jurisdictional facts contained in True Temper's special appearance."

On November 9, 2023, the trial court signed an order denying the Emergency Motion for Reconsideration. The order included the following findings of fact and conclusions of law:

(1) True Temper failed to correct the deficiencies in both the Original and Supplemental Declarations of Jason Jenne. True Temper violated Texas Rule of Civil Procedure 120(a) requiring that any Affidavits or Declarations submitted in support of a Special Exception be on sworn or verified application;
(2) True Temper, after submitting the Original Declaration of Jason Jenne was aware or should have been aware of the deficiency in avoiding the strict requirement of Rule 120(a), *supra*;
(3) [] True Temper had available additional remedies available under Rule 120(a) to support its claim for Special Appearance, including propounding discovery, taking depositions, and/or request for a formal hearing before the Court yet failed to proceed with any of these additional remedies[.]

True Temper filed its notice of accelerated interlocutory appeal.

13

## Issues

Appellant's first three issues concern the verification of the Special Appearance. In its first issue, True Temper argues that the trial court erred in concluding the Special Appearance was not verified by failing to consider the timely-filed declarations of Jason Jenne that were provided in support of True Temper's Special Appearance. In its second issue, True Temper argues that Jason Jenne's declarations meet all the requirements of Rule 120a, the declarations attest to the facts alleged in the Special Appearance, and that the trial court erred by finding both the declaration and Special Appearance to be unverified and unsworn. In its third issue, True Temper argues that Appellee David Kelly waived his right to object to whether True Temper's Special Appearance was verified, and that by raising the issue sua sponte, the trial court deprived True Temper of the opportunity to further cure any alleged defect.

Appellant's fourth issue argues that the trial court erred by denying True Temper's Special Appearance and that Kelly failed to establish that Texas has either general or specific personal jurisdiction over True Temper in this case.

## Standard of Review

A nonresident defendant may challenge a Texas court's personal jurisdiction over it by filing a special appearance. Tex. R. Civ. P. 120a. Whether a trial court has personal jurisdiction over a nonresident defendant is ultimately a question of law

14

that we review de novo. *LG Chem Am., Inc. v. Morgan*, 670 S.W.3d 341, 346 (Tex. 2023); *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013); *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). The plaintiff has the initial burden of pleading sufficient allegations to bring a nonresident defendant within the jurisdiction of a Texas court. *LG Chem Am., Inc.*, 670 S.W.3d at 346; *Moncrief Oil Int'l, Inc.*, 414 S.W.3d at 149; *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010); *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009); *Booth v. Kontomitras*, 485 S.W.3d 461, 476 (Tex. App.—Beaumont 2016, no pet.). If the plaintiff meets this initial burden, the defendant then bears the burden to negate all bases of personal jurisdiction alleged by the plaintiff. *See LG Chem Am., Inc.*, 670 S.W.3d at 346 (citing *Kelly*, 301 S.W.3d at 658). The defendant may negate the jurisdictional allegations on either a factual or legal basis. *Kelly*, 301 S.W.3d at 659.

When, as here, the trial court denies the defendants' special appearance and issues findings of fact and conclusions of law to support its ruling, the findings may be challenged on appeal on legal or factual sufficiency grounds. *TBS Bus. Sols. USA, Inc.*, 2022 Tex. App. LEXIS 6955, at *12 (citing *BMC Software*, 83 S.W.3d at 794). We review a trial court's conclusions of law as legal questions. *Id.* Even though a party may not challenge a trial court's conclusions of law on grounds of factual insufficiency, they may challenge a conclusion of law as incorrect. *Id.* Should we

15

determine that a conclusion of law is erroneous but despite the error the trial court reached the correct ruling, the error—if the trial court reached the right ruling anyway—would not require a reversal. *Id.* at **12-13.

Verification of the Special Appearance

We address Appellant's first three issues together because they all relate to the question of whether True Temper's Special Appearance was verified, and this is a threshold issue. *See TBS Bus. Sols. USA, Inc.*, 2022 Tex. App. LEXIS 6955, at *16. A special appearance "shall be made by sworn motion" that "may be amended to cure defects." Tex. R. Civ. P. 120a(1). Rule 120a requires that affidavits "shall be served at least seven days before the hearing, shall be made on personal knowledge, shall set forth specific facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify." *See* Tex. R. Civ. P. 120a(3). A special appearance that is not verified is defective, and "an amendment that adds a verification cures the special appearance[]" provided the amendment is filed before there is a general appearance. *Dawson-Austin v. Austin*, 968 S.W.2d 319, 322 (Tex. 1998). Any amendment purporting to cure a defective special appearance must be filed before the trial court rules on the special appearance. *See id.* In addition, Texas statutory law provides that "an unsworn declaration may be used in lieu of a written sworn declaration, verification, certification, oath, or affidavit required by statute or

required by a rule, order, or requirement adopted as provided by law." Tex. Civ. Prac. & Rem. Code Ann. § 132.001(a).

In this case, True Temper's Special Appearance filed on June 20, 2023, did not include an affidavit or declaration and did not on its face state that it was a verified motion. On August 18, 2023, before the trial court ruled on the Special Appearance, True Temper filed a "Declaration of Jason Jenne." The Declaration states that "[t]he facts stated herein are true and correct and based on my personal knowledge." The Declaration also states that True Temper is incorporated in Delaware, does not maintain a place of business in Texas, has no employees or agents in Texas, and does not own property or bank accounts in Texas. Then on August 25, 2023—seven days before the case was set for submission in the trial court—True Temper filed a "Supplemental Declaration of Jason Jenne." The Supplemental Declaration states that it is submitted in support of True Temper's Special Appearance, it is made under penalty of perjury, and it provides Jenne's date of birth and address. *See id.* § 132.001 (providing that an unsworn declaration may be used in lieu of a sworn declaration, verification, or affidavit provided it includes a jurat that includes the declarant's date of birth and address). In addition to restating the factual allegations included in the Declaration of Jason Jenne, the Supplemental Declaration included the following allegations:

- The dealers or "custom fit centers" listed on True Temper's website are not True Temper's agents, employees, or contractors;

17

- True Temper does not market or specifically advertise in Texas;
- ACCRA is a Canadian company that operates as a separate business although it is owned by True Temper;
- The invoice David Kelly attached to his Response to Declaration of Jason Jenne is not the invoice for the shafts that Kelly Interests purchased that are the subject of this lawsuit; and
- The shafts at issue in this case were made in Amory, Mississippi.

In its September 19, 2023 order, the trial court found that True Temper's Special Appearance was not sworn nor verified as required by Rule 120a. The trial court further found that the August 18, 2023 Declaration of Jason Jenne was "unsworn and did not attest to the facts within the Special Appearance motion[]" and, therefore, did not verify the Special Appearance. Then in its order on True Temper's Emergency Motion for Reconsideration, the trial court found that True Temper failed to correct deficiencies in Jason Jenne's original and supplemental declarations. The trial court also found that True Temper "was aware or should have been aware of the deficiency in avoiding the strict requirement" of Rule 120a and, although True Temper had available remedies under Rule 120a, it failed to take advantage of those remedies.

We have previously explained that "an affidavit filed without a jurat is a defect that is subject to the rule of waiver since Rule 120a allows special appearances to 'be amended to cure defects.'" *TBS Bus. Sols. USA, Inc.*, 2022 Tex. App. LEXIS 6955, at *17 (citing Tex. R. Civ. P. 120a(1); *Mansions in the Forest, L.P. v. Montgomery Cnty.*, 365 S.W.3d 314, 317 (Tex. 2012); *Dawson-Austin*, 968 S.W.2d

18

at 321-22)). In *TBS Business Solutions USA, Inc.*, this Court concluded that an unsworn declaration that lacked a jurat was sufficient to verify a special appearance because the declarant stated, "I have also reviewed the Special Appearance filed by me and Defendant TBS Business Solutions USA Inc. ("TBS") in the above-referenced lawsuit, and according to my personal knowledge, the facts stated therein are true and correct." *See id.* at *18. We concluded that "[u]nder section 132.001 of the Civil Practices and Remedies Code, an unsworn declaration transforms a special appearance into a sworn motion." *See id.* at *17 (citing Tex. Civ. Prac. & Rem. Code Ann. § 132.001).

Applied here, the Supplemental Declaration of Jason Jenne was submitted in support of True Temper's Special Appearance, it alleged that the facts stated therein were true and correct and based on the declarant's personal knowledge, it was filed seven days before the case was submitted and before True Temper made a general appearance, and it included a jurat. Although the Jenne declaration filed on August 25, 2023, was titled a "Supplemental Declaration," we look to the substance of a filing and not its caption to determine its character. *See* Tex. R. Civ. P. 71; *In re J.Z.P.*, 484 S.W.3d 924, 925 (Tex. 2016); *Surgitek, Bristol-Myers Corp. v. Abel*, 997 S.W.2d 598, 601 (Tex. 1999). Therefore, we conclude that, applying our precedent in *TBS Business Solutions USA, Inc.* and section 132.001 of the Civil Practices and Remedies Code, the Supplemental Declaration of Jason Jenne was sufficient to

19

verify True Temper's Special Appearance. *See* Tex. Civ. Prac. & Rem. Code Ann. § 132.001; *TBS Bus. Sols. USA, Inc.*, 2022 Tex. App. LEXIS 6955, at \*\*17-18. We sustain True Temper's second issue on appeal, and we need not address True Temper's first and third issues because resolving those issues in favor of True Temper would not give True Temper any greater relief. *See* Tex. R. App. P. 47.1.

Personal Jurisdiction

Personal Jurisdiction Generally

"A court must have personal jurisdiction over a defendant to issue a binding judgment." *LG Chem Am., Inc.*, 670 S.W.3d at 346 (citing *Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 7-8 (Tex. 2021)). A defendant's contacts may support either general personal jurisdiction or specific personal jurisdiction. *See Moncrief Oil Int'l, Inc.*, 414 S.W.3d at 150; *Zinc Nacional, S.A. v. Bouche Trucking, Inc.*, 308 S.W.3d 395, 397 (Tex. 2010). Texas courts may exercise personal jurisdiction over a nonresident defendant as authorized by the Texas long-arm statute and when consistent with federal due-process guarantees. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 17.041-.045 (the Texas long-arm statute); *LG Chem Am., Inc.*, 670 S.W.3d at 346; *Luciano*, 625 S.W.3d at 8. The Texas long-arm statute states that a nonresident is "doing business" in Texas when in addition to other acts that may constitute doing business, the nonresident:

> (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;

20

(2) commits a tort in whole or in part in this state; or

(3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.

Tex. Civ. Prac. & Rem. Code Ann. § 17.042. An allegation of jurisdiction may satisfy the Texas long-arm statute, but the allegation may not satisfy the United States Constitution. *Moncrief Oil Int'l, Inc.*, 414 S.W.3d at 149. Therefore, even if a court determines the facts satisfy the Texas long-arm statute, the court must also examine the facts to determine whether the exercise of personal jurisdiction over the defendant comports with due process. *See CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex. 1996).

<u>General Jurisdiction</u>

General jurisdiction may only be exercised over a nonresident defendant whose contacts in the forum state are so continuous and systematic "'as to render [it] essentially at home in the forum State.'" *Daimler AG v. Bauman*, 571 U.S. 117, 119 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)); *see also State v. Volkswagen Aktiengesellschaft*, 669 S.W.3d 399, 412 (Tex. 2023); *Booth*, 485 S.W.3d at 478 (citing *Daimler AG*, 571 U.S. at 127; *Goodyear*, 564 U.S. at 919). This kind of personal jurisdiction allows courts to render a binding judgment against a defendant even if the plaintiff's claims neither arise from activities conducted in the forum state nor "'relate to the forum [s]tate or the defendant's activity there.'" *Volkswagen Aktiengesellschaft*, 669 S.W.3d at 412

21

(quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021)).

General jurisdiction requires a more demanding minimum contacts analysis than specific jurisdiction, and the nonresident defendant must have conducted substantial activities within the forum. *BMC Software*, 83 S.W.3d at 797. For a Texas court to exercise general jurisdiction over a nonresident, the nonresident's contacts with Texas must be continuous, systematic, and substantial. *See Goodyear*, 564 U.S. at 916, 919; *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007) ("If the defendant has made continuous and systematic contacts with the forum, general jurisdiction is established whether or not the defendant's alleged liability arises from those contacts."). "General jurisdiction is premised on the notion of consent. That is, by invoking the benefits and protections of a forum's laws, a nonresident defendant consents to being sued there." *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 808 (Tex. 2002). The plaintiff must establish more than isolated or sporadic visits with the forum before such contacts will constitute the type of continuous, systematic, and substantial contacts necessary for general jurisdiction. *See Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 415-19 (1984).

The Supreme Court has explained,

. . . only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there. "For an individual the

22

paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." With respect to a corporation, the place of incorporation and principal place of business are "paradig[m] . . . bases for general jurisdiction." Those affiliations have the virtue of being unique—that is, each ordinarily indicates only one place—as well as easily ascertainable. These bases afford plaintiffs recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims.

. . .

. . . Accordingly, the inquiry under *Goodyear* is not whether a foreign corporation's in-forum contacts can be said to be in some sense "continuous and systematic," it is whether that corporation's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State."

*Daimler AG*, 571 U.S. at 137-39 (quoting *Goodyear*, 564 U.S. at 919, 924).

In his response to True Temper's Special Appearance, David Kelly argues that "True Temper, by its business model alone and through its extensive business in Texas is amen[]able to Texas jurisdiction under the Texas 'long-arm' jurisdictional reach[.]" While Kelly's response does not clearly argue that True Temper is subject to general jurisdiction in Texas, we address that issue because Appellant raises it in its brief.

David Kelly alleged that:

- True Temper has "dozens and dozens of agents, dealers, retailers, and manufacturers in Texas with whom it does business[;]"
- Texas is one of True Temper's major marketplaces;
- True Temper purposefully availed itself of the privilege of conducting business activities in Texas through its "extensive

23

network" of retailers, distributors, manufacturers and individual golfers; and

- True Temper has been a major player in the Texas golf industry as a manufacturer and supplier.

While these kinds of contacts with the state of Texas may be "continuous and systematic," *see, e.g.*, *Am. Type Culture Collection*, 83 S.W.3d at 810, courts do not generally find them sufficient to show that the entity was "essentially at home" in the state, nor will they be sufficient to support general jurisdiction. *See, e.g.*, *Daimler AG*, 571 U.S. at 127; *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 565 (Tex. 2018). The parties do not dispute that True Temper is incorporated in Delaware and has its principal place of business in Memphis, Tennessee, and these facts are generally regarded as the hallmarks of general jurisdiction. *See Daimler AG*, 571 U.S. at 139 (citing *Goodyear*, 564 U.S. at 919); *see also Ford Motor Co.*, 141 S. Ct. at 1024; *Ford Motor Co. v. Cejas*, No. 09-16-00280-CV, 2018 Tex. App. LEXIS 1389, at **26-27 (Tex. App.—Beaumont Feb. 22, 2018, no pet.) (mem. op.). Therefore, based on the record before us, we cannot say that True Temper's "affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum state." *See Daimler AG*, 571 U.S. at 119 (quoting *Goodyear*, 564 U.S. at 919) (internal quotations omitted). We conclude there is no general jurisdiction over True Temper. *See id.*; *see also Ford Motor Co.*, 2018 Tex. App. LEXIS 1389, at **15-27 (concluding no general personal jurisdiction over the defendants who were not incorporated in Texas and did not have their principal place

24

of business in Texas, despite evidence of sales, marketing, offices, manufacturing, property ownership, and employees in Texas).

Specific Personal Jurisdiction

Specific personal jurisdiction applies more narrowly than general jurisdiction. *Volkswagen Aktiengesellschaft*, 669 S.W.3d at 412-13 (citing *Ford Motor Co.*, 141 S. Ct. at 1024). Specific jurisdiction is limited to claims that "arise out of or relate to" a non-resident's forum contacts, and there must be a "substantial connection between the defendant's contacts and the operative facts of the litigation." *See Sammi Mach. Co. v. Mathews*, No. 09-19-00017-CV, 2019 Tex. App. LEXIS 5894, at *18 (Tex. App.—Beaumont July 11, 2019, pet. denied) (mem. op.) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Moki Mac River Expeditions*, 221 S.W.3d at 585); *see also LG Chem Am., Inc.*, 670 S.W.3d at 347.

Texas courts may exercise personal jurisdiction over a nonresident defendant when (1) the Texas long-arm statute authorizes it and (2) the exercise of personal jurisdiction comports with federal and state constitutional due process guarantees. *Goldstein v. Sabatino*, No. 22-0678, 2024 Tex. LEXIS 385, at *13 (Tex. May 24, 2024) (citing *Old Republic Nat'l Title Ins. Co.*, 549 S.W.3d at 558). Asserting personal jurisdiction over a nonresident defendant is constitutional when (1) the defendant has established "minimum contacts" with the forum state and (2) the exercise of jurisdiction does not offend "traditional notions of fair play and

substantial justice." *See id.* at **13-14 (citing *TV Azteca, S.A.B. de C.V. v. Ruiz*, 490 S.W.3d 29, 36 (Tex. 2016)). To establish minimum contacts, the defendant must have "purposefully [availed] itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Id.* (quoting *Moncrief Oil Int'l, Inc.*, 414 S.W.3d at 150). In addition, for Texas courts to exercise specific jurisdiction over a nonresident defendant, the plaintiff's claims must arise out of or relate to the defendant's contacts with the forum state. *See Volkswagen Aktiengesellschaft*, 669 S.W.3d at 412-13 (citing *Ford Motor Co.*, 141 S. Ct. at 1024-25; *Luciano*, 625 S.W.3d at 8-9); *see also Moki Mac River Expeditions*, 221 S.W.3d at 579 (specific-jurisdiction analysis involves two co-equal components: purposeful availment and relatedness); *Booth*, 485 S.W.3d at 481 (Specific jurisdiction requires that the relationship between the defendant, the forum, and the litigation must arise out of contacts that the defendant himself creates with the forum state and not merely defendant's contact with persons who reside in the forum state.) (citing *Walden v. Fiore*, 571 U.S. 277, 285 (2014)).

This kind of personal jurisdiction involves a claim-by-claim analysis that focuses on the relationship between the defendant, the forum state, and the operative facts of the litigation. *Volkswagen Aktiengesellschaft*, 669 S.W.3d at 413 (citing *Moncrief Oil Int'l, Inc.*, 414 S.W.3d at 150); *see also Bristol-Myers Squibb Co. v. Superior Ct.*, 582 U.S. 255, 262 (2017); *TV Azteca, S.A.B.*, 490 S.W.3d at 42 (citing

26

*Walden*, 571 U.S. at 283-84). We consider the "quality and nature of [these] contacts, rather than their number[.]" *Am. Type Culture Collection*, 83 S.W.3d at 806. And we examine the defendant's purposeful conduct and contacts with Texas, rather than another's conduct and contact with Texas. *See Walden*, 571 U.S. at 291 ("[I]t is the defendant, not the plaintiff or third parties, who must create contacts with the forum State.") A substantial connection may result, however, from a single purposeful act. *Moncrief Oil Int'l, Inc.*, 414 S.W.3d at 151-52.

Purposeful Availment

The first prong of specific jurisdiction, purposeful availment, is the "touchstone of jurisdictional due process[.]" *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005). The purposeful availment analysis asks whether "'a nonresident's conduct and connection to a forum are such that it could reasonably anticipate being haled into court there.'" *See Volkswagen Aktiengesellschaft*, 669 S.W.3d at 413 (quoting *Moncrief Oil Int'l, Inc.*, 414 S.W.3d at 152). "To show purposeful availment, a plaintiff must prove that a nonresident defendant seeks a benefit, advantage, or profit from the forum market." *In re Christianson Air Conditioning & Plumbing, LLC*, 639 S.W.3d 671, 679 (Tex. 2022) (citing *Michiana Easy Livin' Country, Inc.*, 168 S.W.3d at 785). We apply three considerations to determine purposeful availment:

- "[O]nly the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person";

27

- "The contacts relied upon must be purposeful," not "random, fortuitous, or attenuated"; and
- The defendant "must seek some benefit, advantage[,] or profit by availing itself of [Texas's] jurisdiction."

*See Volkswagen Aktiengesellschaft*, 669 S.W.3d at 413-14 (quoting *Moncrief Oil Int'l, Inc.*, 414 S.W.3d at 151). "Where the defendant has 'deliberately' engaged in significant activities within a state, he 'manifestly has availed himself of the privilege of conducting business there.'" *Luciano*, 625 S.W.3d at 9 (quoting *Burger King Corp.*, 471 U.S. at 475-76).

<u>Plaintiff's Jurisdictional Allegations</u>

"Because the plaintiff defines the scope and nature of the lawsuit, the defendant's corresponding burden to negate jurisdiction is tied to the allegations in the plaintiff's pleading." *Kelly*, 301 S.W.3d at 658; *Brenham Oil & Gas, Inc. v. TGS-NOPEC Geophysical Co.*, 472 S.W.3d 744, 764 (Tex. App.—Houston [1st Dist.] 2015, no pet.). In its third-party claim against True Temper, David Kelly asserted the following:

> . . . True Temper sells thousands of shafts to Texas golf manufacturers, both directly and through agents, advertises extensively its products in Texas through numerous media channels, and enlists both original equipment manufacturers and custom golf club builders to install its products on their Texas offerings. It would be the height of arrogance to suggest that Texas is not a prime target market for True Temper Sports.

28

As we have noted herein, the Texas long-arm statute provides that a nonresident does business in the state if the nonresident commits certain acts in Texas, including, but not limited to, the following:

(1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;
(2) commits a tort in whole or in part in this state; or
(3) recruits Texas resident, directly or through an intermediary located in this state, for employment inside or outside this state.

*See* Tex. Civ. Prac. & Rem. Code Ann. § 17.042. Because the examples in the long-arm statute are illustrative and not comprehensive, Texas courts may apply a broader standard. *See CSR Ltd.*, 925 S.W.2d at 594 ("The long-arm statute allows a court to exercise personal jurisdiction over a nonresident defendant that does business in Texas. In addition to a discrete list of activities that constitute doing business in Texas, the statute provides that 'other acts' by the nonresident can satisfy the requirement."); *Evergreen Media Holdings, LLC v. FilmEngine Ent., LLC*, No. 09-14-00364-CV, 2016 Tex. App. LEXIS 10395, at *16 (Tex. App.—Beaumont Sept. 22, 2016, no pet.) (mem. op.) ("A plaintiff satisfies this minimal requirement by an allegation that the nonresident was doing business in Texas."); *Brenham Oil & Gas, Inc.*, 472 S.W.3d at 763 (concluding that allegation that at "'all times material to this lawsuit, [defendant], was doing business in Houston, Harris County, Texas[,]'" was sufficient to carry plaintiff's initial burden to plead jurisdictional facts and shifted burden to defendant); *Huynh v. Nguyen*, 180 S.W.3d 608, 619-20 (Tex. App.—

29

Houston [14th Dist.] 2005, no pet.) (stating plaintiff's minimal pleading requirement was satisfied by allegation that nonresident defendants were doing business in Texas).

We conclude that the allegations in the third-party petition are sufficient to carry David Kelly's initial burden to plead allegations sufficient to bring True Temper within the reach of the Texas long-arm statute and to allege that True Temper purposefully availed itself of the benefits of the privilege of conducting business in Texas because they generally allege that True Temper does business in Texas or with persons or businesses in Texas. *See* Tex. Civ. Prac. & Rem. Code Ann. § 17.042; *CSR Ltd.*, 925 S.W.2d at 594. Because Kelly met his initial burden in his third-party petition, the burden shifted to True Temper to negate Kelly's alleged bases of jurisdiction. *See Kelly*, 301 S.W.3d at 660; *Brenham Oil & Gas, Inc.*, 472 S.W.3d at 763.

Relatedness

A defendant negates jurisdiction on a factual basis by presenting evidence to disprove the plaintiff's jurisdictional allegations. *Kelly*, 301 S.W.3d at 659. "The plaintiff can then respond with its own evidence that affirms its allegations, and it risks dismissal of its lawsuit if it cannot present the trial court with evidence establishing personal jurisdiction." *Id.* A defendant negates jurisdiction on a legal basis by showing:

> [E]ven if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction; the defendant's contacts with Texas fall short of purposeful availment; for specific jurisdiction, that the claims do not arise from the contacts; or that traditional notions of fair play and substantial justice are offended by the exercise of jurisdiction.

*Id.*

True Temper argues that the allegations made by Kelly are not sufficient for the exercise of specific personal jurisdiction over it because

> Kelly does not allege that True Temper engaged in any act in Texas related to the specific facts of this case [and] [t]here is no evidence or allegation that the True Temper shafts at issue were purchased or manufactured in Texas. . . . Kelly pled no facts and presented no evidence suggesting that True Temper engaged in any act in Texas giving rise to this suit.

Kelly's jurisdictional allegations center around its assertion that True Temper's products are widely marketed and sold in Texas—that there are "dozens and dozens of agents, dealers, retailers, and manufacturers in Texas" with whom True Temper does business; that Texas is one of True Temper's major marketplaces; that True Temper has been a major player in the Texas golf industry as a manufacturer and supplier of shafts; and that "[b]ased on True Temper's obvious presence [in Texas] it could reasonably anticipate being ha[]led into Texas courts[.]" According to Kelly, True Temper's contacts with Texas relate to the operative facts of this lawsuit because:

> Kelly Interests sued both David Kelly and True Temper. At all times, True Temper had the care, custody and control of the shafts shipped to Kelly Interests. Although Kelly Interests wanted specific shaft

31

specifications, such as a .370 tip diameter and shafts with no pitting or flaking, neither Kelly Interests nor David Kelly had control of the 16 pallets of shafts shipped to Kelly Interests. True Temper entered into an agreement with Kelly Interests through True Temper's agent, David Kelly[,] to fulfill the order as specified by Kelly Interests.

In response to David Kelly's allegations and arguments, True Temper asserts the following:

- True Temper does not market or advertise specifically to or in the state of Texas, and it does not have dealers or "custom fitting centers" in Texas;
- ACCRA is a wholly-owned subsidiary of True Temper but it operates as a separate business, and it has no offices, employees, or contractors in Texas;
- The shafts at issue in this lawsuit were purchased by Kelly Interests from David Kelly, David Kelly purchased them from True Temper, and the shafts were manufactured in Amory, Mississippi;
- David Kelly is a vendor based in Memphis, Tennessee;
- There is no evidence or allegation that the True Temper shafts at issue were purchased or manufactured in Texas; and
- The invoice that David Kelly attached to its Response to True Temper's Special Appearance is from Premium Golf Management, Co. to David Kelly and shows an Ontario, Canada phone number, the invoice is not for the shafts at issue in this lawsuit, and the invoice shows a U.S. address for billing purposes.

The relatedness requirement requires "'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Bristol-Myers*, 582 U.S. at 262 (quoting *Goodyear*, 564 U.S. at 919). The mere fact that a business's services or products are marketed or sold within Texas is not enough for specific personal jurisdiction because "the exercise of specific jurisdiction is prohibited if the

32

suit does not aris[e] out of or relat[e] to the defendant's contact with the forum." *See Luciano*, 625 S.W.3d at 14 (internal quotations omitted). As in *Ford Motor Co.*, specific jurisdiction here is lacking because the particular products at issue were originally sold outside the forum state and were not manufactured in Texas. *See id.* at 15 (citing *Ford Motor Co.*, 141 S. Ct. at 1023). "What is needed—and what is missing here—is a connection between the forum and the specific claims at issue." *Bristol-Myers*, 582 U.S. at 265.

Here, the shafts at issue in this lawsuit were purchased by Kelly Interests from David Kelly, David Kelly is a vendor based in Memphis, Tennessee, and the shafts were manufactured in Amory, Mississippi. There is no evidence or allegation that the True Temper shafts at issue were purchased or manufactured or sold in Texas or to a Texas buyer. We conclude that Kelly failed to meet his burden to show a substantial connection or "relatedness" between True Temper's activities or presence in Texas and the operative facts of the claims in this lawsuit. *See Luciano*, 625 S.W.3d at 14, 15 (citing *Bristol-Myers*, 582 U.S. at 265); *see also Sammi Mach. Co.*, 2019 Tex. App. LEXIS 5894, at **15-19 (concluding the evidence was not sufficient for Texas courts to exercise specific personal jurisdiction over defendant even though evidence that defendant had communications, sales, and contractual relationships in Texas with numerous other customers, because there was no evidence that plaintiff's alleged injuries arose out of or related to defendant's

conduct as defendant's company was not even formed until after the alleged injuries occurred).

We distinguish this case from the facts in *LG Chem America, Inc. v. Morgan. See* 670 S.W.3d 341. In *LG Chem*, the Texas Supreme Court found the plaintiff's allegations were sufficient to support the exercise of specific personal jurisdiction over the defendant where the LG Chem defendants manufactured and sold lithium-ion batteries to manufacturers in Texas and where plaintiff was an individual consumer who alleged he was injured when one of LG Chem's batteries "'exploded' in his pocket." *Id.* at 343-44. The Court reasoned that "there is no requirement for jurisdictional purposes that the market segment the LG Chem defendants served be precisely the same one from which [plaintiff] purchased the battery." *Id.* 349. The Court explained that it was undisputed that the LG Chem defendants sold and distributed the batteries at issue in Texas and that the plaintiff alleged those batteries exploded and injured him in Texas. *Id.* The Court concluded that "personal jurisdiction [was] not lacking merely because the plaintiff is outside a segment of the market the defendant targeted [and] the minimum-contacts analysis does not require that the plaintiff's claims arise out of a set of facts mirroring the defendant's expectations about the course its product would follow after it entered Texas." *Id.* at 343-44. The Court also reasoned that when Texas extends benefits and protections to entities conducting business in the state, it "creates reciprocal obligations,

including an obligation that products the defendant sells or distributes in the state be safe for its citizens to use." *Id.* at 346-47 (citing *Ford Motor Co.*, 141 S. Ct. at 1029-30).

By contrast, in this case, the shafts at issue were manufactured in Mississippi and sold to David Kelly in Tennessee, who then sold the shafts to Kelly Interests located in Texas. The record lacks evidence that True Temper knew of Kelly Interests product specifications, and there is no evidence that True Temper conducted business or otherwise interacted with the Kelly Interests or David Kelly in Texas for the shafts in question. Unlike in *LG Chem*, there is no evidence that True Temper manufactured the shafts at issue with the expectation that they would be sold to and used by a consumer in Texas. And the record includes no evidence that the shafts had any defects creating safety issues to consumers like the defects that were present in *LG Chem*.

We also distinguish this case from the facts in *State v. Volkswagen Aktiengesellschaft*. *See* 669 S.W.3d 399 (hereinafter "*Volkswagen*"). In *Volkswagen*, the State, together with local governments, brought civil lawsuits to enforce state environmental laws against German manufacturers that "intentionally evaded compliance with federal emissions standards by embedding illegal, emissions-beating technology in branded vehicles." *Id.* at 405. The evidence in *Volkswagen* showed that the manufacturers purposely structured their relationships with

35

distributors and dealerships to retain control over after-sale recalls and used that control to tamper with vehicles in Texas after they had been sold to consumers. *Id.* at 406. The Court explained that the defendants designed, created, and implemented a software function to evade U.S. emissions standards, and that software was installed on vehicles by dealerships after vehicles were sold to consumers in Texas and when the consumers brought their cars to the dealers for normal maintenance. *Id.* at 407-09. The Court reasoned that this was not a "typical stream-of-commerce scenario[]" because the affected vehicles were already in Texas when the defendant manufacturer "reached in to modify those vehicles in ways that allegedly violate[d] state law." *Id.* at 417. In concluding that Texas courts had specific personal jurisdiction over the German manufacturers, the Court emphasized that the manufacturers' agreements with dealerships provided they would have "the exclusive prerogative to institute a recall[]" and reflected "the German manufacturers' actual and contractual control over the entire scheme and each level of the distribution stream." *Id.* at 418.

In this case, however, there is no evidence of any post-sale tampering or control asserted by True Temper over the shafts it sold to David Kelly. Nor is there any evidence of True Temper's "purposeful use of existing distribution channels and an established control structure" to conduct after-sale tampering or control over the shafts. *Id.* at 427.

Having found no basis for either general or specific personal jurisdiction over True Temper, we need not examine whether due process is satisfied. *See* Tex. R. App. P. 47.1. We conclude that the trial court erred by denying True Temper's Special Appearance, and we sustain True Temper's fourth issue. We reverse the trial court's order denying True Temper's Special Appearance and render the judgment the trial court should have rendered, dismissing David Kelly's claims against True Temper for lack of personal jurisdiction. *See* Tex. R. App. P. 43.2(c).

REVERSED AND RENDERED.

LEANNE JOHNSON
Justice

Submitted on May 3, 2024
Opinion Delivered June 20, 2024

Before Golemon, C.J., Horton and Johnson, JJ.